FILED
John E. Triplett, Acting Clerk
United States District Court

By CAsbell at 8:52 am, Feb 10, 2021

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

DANIEL LEE BURTON, JR.,

      Plaintiff,

      v.

ANDREW SAUL,

      Defendant.

CIVIL ACTION NO.: 6:19-cv-90

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Antony Saragas ("the ALJ") denying his claim for a Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse and remand the ALJ's decision for rehearing. Doc. 7 at 1–2. For the reasons discussed below, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff applied for a Period of Disability and Disability Insurance Benefits on April 13, 2017, alleging he became disabled on March 18, 2011. Doc. 5-6 at 2–5 (R. 176–79). Plaintiff's claim was denied initially and upon reconsideration. Doc. 5-4 at 2–5, 7–10 (R. 90–93, 95–98). On May 13, 2019, the ALJ found Plaintiff not disabled after holding a video hearing. Doc. 5-2 at 12–20 (R. 11–19). Vocational expert Tina Baker-Ivy testified at the hearing. Id. at 56–62 (R. 55–61). The Appeals Council denied Plaintiff's request for review. Id. at 2–6 (R. 1–5). Although the ALJ informed Plaintiff of his right to an attorney, Plaintiff decided to represent

himself pro se in the proceedings before the ALJ.  Doc. 5-2 at 29 (R. 28).  Plaintiff now

represents himself pro se before this Court.  Doc. 7 at 2.

Plaintiff was 47 years old at the time of application and 49 years old at the time of the

ALJ's decision.  Doc. 5-2 at 32 (R. 31).  Plaintiff has both a high school diploma and bachelor's

degree.  Id. at 32 (R. 31).  Plaintiff previously worked as a contractor for a private security firm

for several years.  Id. at 32–33 (R. 31–32).  The ALJ found Plaintiff suffers from the following

severe impairments: degenerative disc disease of the cervical and lumbar spine, status post motor

vehicle accident ("MVA"), lumbar fusion, and cervical foraminotomy; multi-joint osteoarthritis;

Willis-Ekbom syndrome; obesity; history of traumatic brain injury; myofascial pain disorder;

chronic headaches; and tinnitus.  Id. at 14 (R. 13).  The ALJ found Plaintiff suffers from the

following non-severe impairments: cellulitis, acute kidney injury, hypothyroidism, history of

retinal tears, depression, anxiety, adjustment disorder, and post-traumatic stress disorder

("PTSD").  Id. at 14–15 (R. 13–14).

## DISCUSSION

### I.      The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition

of disability as follows:

> An individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520,

416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.

If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the

claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If

the claimant's impairment or combination of impairments is severe, then the evaluation proceeds

to step three.  The third step requires a determination of whether the claimant's impairment

meets or equals one of the impairments listed in the Code of Federal Regulations and is

acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful

activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v.

Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the

listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential

evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from

performing past relevant work, i.e., whether the claimant has the residual functional capacity to

perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693

(11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the

claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in

original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is

unable to perform his past relevant work, the final step of the evaluation process determines

whether he is able to make adjustments to other work in the national economy, considering his

age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

In this case, the ALJ followed this sequential process and determined Plaintiff did not engage in substantial gainful activity between the alleged onset date of March 18, 2011 and the date last insured of December 31, 2016.  Doc. 5-2 at 14 (R. 13).  At step two, the ALJ determined Plaintiff had the following combination of severe impairments: degenerative disc disease of the cervical and lumbar spine, status post MVA, lumbar fusion, and cervical foraminotomy; multi-joint osteoarthritis; Willis-Ekbom syndrome; obesity; history of traumatic brain injury; myofascial pain disorder; chronic headaches; and tinnitus.  Id.  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in the regulations.  Id. at 16 (R. 15).

The ALJ determined Plaintiff has the residual functional capacity to perform light work with limitations.  Doc. 5-2 at 16 (R. 15).  The ALJ concluded Plaintiff can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl but should never climb ladders, ropes, or scaffolds.  Id.  The ALJ found Plaintiff can frequently balance and occasionally reach overhead, occasionally be exposed to vibrations, and occasionally work around hazards.  Id.  The ALJ further concluded Plaintiff can frequently perform fingering, feeling, and handling but should avoid exposure to more than moderate noise.  Id.  At step four, the ALJ found Plaintiff could not perform past relevant work as a security officer.  Id. at 18 (R. 17).  Therefore, the ALJ moved on to the fifth and final step.  At step five, the ALJ determined there are jobs which exist in significant numbers in the national economy Plaintiff could perform.  Id. at 19 (R. 18).  Because of Plaintiff's ability to perform light work with certain limitations, the ALJ concluded Plaintiff could perform the following jobs: cleaner/housekeeper, assembler, and mail clerk.  Id. at 19–20

(R. 18–19).  The ALJ based his decision on the vocational expert's testimony.  Id. at 20 (R. 19).

Ultimately, the ALJ concluded Plaintiff was not under a disability at any time from March 18,

2011 (the alleged onset date) through December 31, 2016 (the date last insured).  Id.

## II.      Issues Presented[1]

First, Plaintiff argues the ALJ did not consider the injuries he sustained during his

military service.  Second, Plaintiff argues the ALJ erred by concluding he physically attended

Veterans' Affairs' ("VA") events, when he only participated over the phone.  Third, Plaintiff

argues the ALJ erred in failing to consider his traumatic brain injury diagnosis.  Fourth, Plaintiff

argues he received a delayed diagnosis of fibromyalgia due to circumstances outside of his

control.

## III.     Standard of Review

It is well-established judicial review of social security cases is limited to questions of

whether the Commissioner's factual findings are supported by "substantial evidence" and

whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936

F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A

reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for

that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the

evidence preponderates against the Commissioner's factual findings, the court must affirm a

decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of

the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable

---

[1]      Rather than responding to each of Plaintiff's enumerations of error, Defendant argues why the
ALJ's entire decision is supported by substantial evidence.  Doc. 8.  Therefore, the Court does not discuss
Defendant's response because Defendant has not specifically addressed each of Plaintiff's arguments.

mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496

F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a

scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the

court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

Failure to delineate and apply the appropriate standards mandates that the findings be vacated

and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his

conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233,

1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not

subject to the substantial evidence standard).  If the Commissioner fails either to apply correct

legal standards or to provide the reviewing court with the means to determine whether correct

legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker,

679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by*

Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.     Whether the ALJ Considered Plaintiff's Military Service Injuries**

First, Plaintiff argues the ALJ did not consider the injuries he sustained during military

service.  Doc. 7 at 1.  Plaintiff states he underwent spinal surgery on November 9, 2011.  Id.

Plaintiff states Dr. Bradley Heiges from Optim Orthopedic treated him for these injuries.  Id.  He

also states he received testing for a traumatic brain injury.  Id.  Plaintiff argues the ALJ erred by

not discussing these surgeries and testing because this would contradict the vocational expert's

testimony.  Id.  Plaintiff further asserts his shoulder reconstruction surgery completed in 1998

and other continuing treatment for the injuries would show his inability to complete light work.

Id.

Contrary to Plaintiff's assertions, the ALJ did consider the injuries he sustained during

military service.  The ALJ specifically found Plaintiff's back issues and history of traumatic

brain injury were severe impairments.  Doc. 5-2 at 14 (R. 13).  When assessing Plaintiff's

symptoms, the ALJ noted Plaintiff's injuries to his neck, shoulder, and back dating back to 2011

and his traumatic brain injury residuals.  Id. at 17 (R. 16).  The ALJ further discussed Plaintiff's

"exemplary and interesting military/CIA service."  Id.  The ALJ recognized Plaintiff had back

and neck injuries but found this would not prevent him from completing a normal work week.

Id.  The ALJ discussed an MRI completed in October 2015, which showed no acute cranial

process or findings of traumatic brain injury.  Id.  While the ALJ did find the impairments arising

from injuries related to Plaintiff's military service severe, the ALJ found Plaintiff could still

perform jobs available in the national economy based on the vocational expert's testimony.  Id.

at 16 (R. 15).  This Court should not reweigh the evidence on appeal.  Dyer, 395 F.3d at 1210.

Although the ALJ did not specifically discuss each of Plaintiff's surgeries, the ALJ need

not address every piece of evidence.  Id. at 1211 ("[T]here is no rigid requirement that the ALJ

specifically refer to every piece of evidence in his decision . . . .").  The ALJ did state he

considered treatment notes from Plaintiff's medical providers and found them partially

persuasive because they were made contemporaneously with treatment.  Doc. 5-2 at 18 (R. 17).

However, the ALJ found these treatment notes did not support a finding that Plaintiff is unable to

perform light work.  Id.  The ALJ's finding the treatment notes did not show complete disability

is supported by substantial evidence.  Dr. Heiges performed the initial surgery on Plaintiff and

provided follow-up treatment to Plaintiff.  Doc. 5-8 at 22–23 (R. 322–23).  Although Dr. Heiges

discussed the seriousness of Plaintiff's injuries in his treatment notes, Dr. Heiges stated he

believed Plaintiff could work a total of eight hours per day and could carry and lift 50 pounds or

less.  Doc. 5-8 at 8 (R. 308).  On another occasion, Dr. Heiges stated Plaintiff was "making

anticipated progress and would otherwise be ready to return to a modified job."  Id. at 13

(R. 313).  In addition, Dr. Heiges noted Plaintiff did not suffer from significant deformity or

other signs of trauma on September 1, 2015.  Id. at 6 (R. 306).

The ALJ's ultimate finding that Plaintiff could perform light work with certain

limitations is also supported by substantial evidence.  Two state agency consultants separately

determined Plaintiff could perform light work with postural limitations.  Doc. 5-3 at 8–10, 20–23

(R. 71–73, 83–86).  As discussed above, the opinion of Dr. Heiges, one of Plaintiff's treating

physicians, supports this finding.  Doc. 5-8 at 8 (R. 308).  Therefore, the ALJ did not err.

**V.      Whether the ALJ Concluded Plaintiff Attended Veteran Events in Person**

Second, Plaintiff argues the ALJ incorrectly concluded he attended VA events in person.

Doc. 7 at 1.  Plaintiff states he testified about his volunteering for veterans' organizations during

the hearing.  Id.  Plaintiff asserts his testimony was incorrectly transcribed because he only

participated in the VA events telephonically rather than in person.  Id.  Plaintiff states he could

not have attended VA events in person because he cannot drive long distances due to his

headaches, arthritis, and spine injuries.  Id.

The hearing transcript does not specify whether Plaintiff volunteered in person or over

the phone.  Doc. 5-2 at 49–51 (R. 48–50).  The ALJ only discussed Plaintiff's volunteering at the

VFW/DAV/American Legion when discussing Plaintiff's mental impairments.  Doc. 5-2 at 15

(R. 14).  The ALJ determined Plaintiff's volunteering illustrated his capacity for public

interaction.  Id.  The ALJ stated the volunteering, along with Plaintiff's other daily activities,

showed his mental conditions would not limit his work activities to the extent Plaintiff alleged.

Id.  In his decision, the ALJ did not state specifically whether he believed Plaintiff attended these

events telephonically or in person.  Even assuming the ALJ incorrectly assumed in-person

attendance, the error would be harmless.  Telephonic participation with veterans' organizations is

consistent with the ALJ's conclusion that Plaintiff's capability for public interaction exceeded

the limitations claimed in Plaintiff's allegations and is consistent with the ALJ's residual

functional capacity determination that Plaintiff could have occasional interaction with the public.

Plaintiff also suggests the ALJ's understanding he attended these events in person impacted the

ALJ's findings relating to his *physical* impairments.  Doc. 7 at 1.  Because the ALJ only

analyzed the volunteering in the context of Plaintiff's mental impairments and his ability to

interact with others, whether the volunteering occurred telephonically or in person would have

no bearing on Plaintiff's physical limitations.  Plaintiff has failed to show any error by the ALJ

regarding his volunteer work with veterans' organizations.

**VI.      Whether the ALJ Considered Plaintiff's Traumatic Brain Injury**

Third, Plaintiff argues the ALJ incorrectly concluded he did not suffer traumatic brain

injuries prior to his date last insured ("DLI").  Doc. 7 at 1.  Plaintiff states his traumatic brain

injuries prior to his DLI are shown in records he submitted to the ALJ.  Id.  Plaintiff argues he

must have suffered his traumatic brain injury prior to his DLI because he suffered brain injuries

from the same incident that caused his back injuries.  Id.

Plaintiff bears the burden of proving he is disabled prior to the DLI.  Moore v. Barnhart,

405 F.3d 1208, 1211 (11th Cir. 2005).  Here, Plaintiff must prove he was disabled between the

alleged onset date of March 18, 2011 and his DLI of December 31, 2016.  A retrospective

diagnosis after the DLI only establishes disability when the diagnosis is corroborated by pre-DLI

evidence.  Mason v. Comm'r of Soc. Sec., 430 F. App'x 830, 832 (11th Cir. 2011) (citing Estok

v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998)).

Plaintiff did not meet his burden of showing he suffered a disabling traumatic brain injury prior to the DLI.  As the ALJ noted, Plaintiff did not undergo an exploratory traumatic brain injury study until 2018, two years after his DLI.  Doc. 5-2 at 18 (R. 17); Doc. 5-19 at 71–74, 41–62 (R. 1124–45, 1153–57).  Although Plaintiff testified about his participation in the study, this study appears to have been inconclusive at the time of the ALJ's decision, or at least no findings were submitted to the ALJ for review.  Doc. 5-2 at 18, 37–39 (R. 17, 36–38).  Plaintiff also mentions his traumatic brain injury was diagnosed by the National Institutes of Health.  Doc. 7 at 1.  However, Plaintiff stated in documents submitted to the ALJ this treatment occurred in 2018, which was also well after the DLI.  Doc. 5-19 at 74.  Further, pre-DLI evidence does not corroborate a traumatic brain injury.  An MRI completed in 2015 did not show a traumatic brain injury.  Doc. 5-9 at 54 (R. 388).  Therefore, the ALJ did not err; Plaintiff has not met his burden of proving a traumatic brain injury rendered him disabled prior to his DLI.

## VII.    Whether the ALJ Properly Considered Fibromyalgia

Finally, Plaintiff argues he was only diagnosed with fibromyalgia after his DLI because of delays in receiving treatment outside his control.  Doc. 7 at 1.  Plaintiff asserts he first went to the VA for treatment, and the VA was incapable of diagnosing him with this condition.  Id. Plaintiff states he then went to Mayo Jacksonville, where he was diagnosed with fibromyalgia after experiencing long wait times to get an appointment.  Id.

As discussed above, Plaintiff bears the burden of showing he is disabled prior to the DLI. Moore, 405 F.3d at 1211.  A retrospective diagnosis only establishes disability when corroborated by pre-DLI evidence.  Mason, 430 F. App'x at 832.

The ALJ did not specifically discuss a fibromyalgia diagnosis in his decision but noted a similar condition called myofascial pain disorder.[2]  Doc. 5-2 at 14 (R. 13).  Plaintiff has not met his burden of showing he suffered from fibromyalgia prior to the DLI.  The records show Plaintiff did not receive treatment for fibromyalgia from Mayo until April 2018.  Doc. 5-19 at 27–32 (R. 1110–15).  Other records only show myofascial pain symptoms after the DLI.  Doc. 5-19 at 14 (R. 1097) (noting "acute lumbar myofascial strain" in 2017); Doc. 5-19 at 7 (R. 1090) (discussing myofascial pain diagnosis in April 2017).  After noting "DLI is an issue here," the ALJ specifically referenced the Mayo Jacksonville records.  Doc. 5-2 at 18 (R. 17).  The ALJ discussed Plaintiff's "somatic complaints" during the Mayo Clinic visit with Dr. Malavet but found the visit occurred "long after the DLI."  Id.  Plaintiff did not produce any pre-DLI evidence to corroborate a fibromyalgia diagnosis.  In fact, Plaintiff appears to concede he was only recently treated for fibromyalgia in records he submitted to the ALJ.  Doc. 5-19 at 73 (R. 1156) (stating new evidence showed the VA prescribed him medication for fibromyalgia).  Therefore, the ALJ did not err in concluding Plaintiff did not suffer from fibromyalgia pre-DLI.

## CONCLUSION

The ALJ's decision is supported by enough evidence that a reasonable mind would accept as adequate.  Ingram, 496 F. 3d at 1260.  The ALJ applied the appropriate legal standards and has provided this Court with sufficient information to review the decision.  Martin, 894 F.2d at 1529; Doc. 5-2 at 12–20 (R. 11–19).  Therefore, the ALJ has not erred.  Accordingly, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner.  I also **RECOMMEND**

---

[2]    Plaintiff does not argue the ALJ erred by referring to his fibromyalgia as myofascial pain disorder.  Instead, he argues he suffered from the condition pre-DLI.  Doc. 7 at 1.  On a January 2018 disability report appeal form, Plaintiff stated, "WE ARE ABLE TO RULE OUT FIBROMYALGIA BUT DISCOVERED IT IS CHRONIC MYOFASCIAL PAIN DISORDER . . . ."  Doc. 5-7 at 53 (R. 252).

the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 10th day of February, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

12